HDM:MGD
F. #2021R00884

**Filed: December 9, 2022**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X

**CR-22-542**
**Judge Matsumoto**
**Mag. Judge Merkl**

UNITED STATES OF AMERICA

  - against -

ARTUR ZABORENKO,
  also known as "Alex,"

     Defendant.

I N D I C T M E N T

Cr. No. **22-00542 (KAM)**
(T. 18, U.S.C., §§ 981(a)(1)(C)
982(a)(1), 982(a)(7), 982(b)(1),
1341, 1349, 1956(h), 1957(a),
1957(b), 2 and 3551 et seq.; T. 21,
U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

- - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

  At all times relevant to this Indictment, unless otherwise indicated:

I.  Background

  A.  The New York State No-Fault Automobile Insurance Program

    1.  Since 1974, New York State has maintained a "no-fault" liability

automobile insurance coverage program ("No-Fault Insurance") for automobile drivers insured

within the state.

    2.  New York's No-Fault Insurance law required automobile insurance

companies (the "No-Fault Insurers") to automatically pay automobile insurance claims for

certain types of motor vehicle accidents, provided the claimed medical services were medically

necessary and actually rendered, and that the claimed amounts fell below a particular injury or

damages threshold. This process was intended to resolve automobile claims without

apportioning blame or fault for the accident, thereby avoiding the costs associated with an

extended investigation of the accident or protracted litigation between the parties and their insurance companies.

3.     New York State law forbids medical providers and those submitting claims on their behalf to make materially false statements or omissions in the medical records and other paperwork submitted in support of such claims.

4.     Under New York's Comprehensive Motor Vehicle Insurance Reparations Act and the regulations promulgated thereto, all automobile insurers operating in the State of New York were required to provide No-Fault Insurance benefits to insured drivers.  No-Fault Insurance benefits included up to $50,000 per insured for necessary expenses that were incurred for health care goods and services, including medical services.

5.     The New York State No-Fault Insurance Program qualified as a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

B.     The Defendant and Relevant Entities and Individuals

6.     The defendant ARTUR ZABORENKO, also known as "Alex," was a resident of the State of New York.  ZABORENKO submitted and caused to be submitted bills to No-Fault Insurers on behalf of licensed medical providers for services purportedly performed within the Eastern District of New York.

7.     Co-Conspirator-1, an individual whose identity is known to the Grand Jury, was a physical therapist who was licensed by the State of New York.

8.     Company-1, an entity the identity of which is known to the Grand Jury, was a corporation owned by Co-Conspirator 1 that purported to provide medical services to victims of automobile accidents within the Eastern District of New York.  Company-1 maintained a bank account at Bank-1, an entity the identity of which is known to the Grand Jury,

2

with an account number ending in 1134 (the "1134 Account"). Co-Conspirator-1 was the sole signatory for the 1134 Account.

9. Insurer-1, an entity the identity of which is known to the Grand Jury, was a No-Fault Insurer located in California that provided No-Fault Insurance to automobile drivers in New York State.

II. The Fraudulent Scheme

A. Conspiracy to Commit Health Care Fraud and Mail Fraud

10. In or about and between January 2020 and December 2022, the defendant ARTUR ZABORENKO agreed with others, including, but not limited to, Co-Conspirator 1, to engage in a fraudulent scheme during which claims for medical services purportedly performed by specified medical providers, including but not limited to Co-Conspirator 1, were submitted and caused to be submitted, by the United States mails and otherwise, to No-Fault Insurers, even though the specified medical professional had not in fact performed the medical services.

11. In particular, the defendant ARTUR ZABORENKO, together with others, agreed to submit, and to cause the submission of, false and fraudulent claims reflecting that diagnostic testing had been provided to No-Fault Insurance beneficiaries, including, but not limited to, beneficiaries living within the Eastern District of New York, when in fact the testing had not been conducted or had not been conducted as claimed. For example, certain claims falsely and fraudulently represented that the diagnostic testing had been provided by Co-Conspirator 1 on behalf of Company-1 when, in fact, Co-Conspirator 1 had not evaluated or provided the specified services to the No-Fault Insurance beneficiaries on whose behalf such claims were submitted.

3

12.     In order to perpetrate and cover up the fraudulent scheme, the defendant

ARTUR ZABORENKO, together with others, falsified various records pertaining to the

provision of medical services, including but not limited to patient medical records, and caused

such records to be falsified, to reflect, among other things, that medical services had been and

would be provided by or under the supervision of Co-Conspirator-1 or another specified medical

professional, when in fact no such services were provided by or supervised by the specified

medical professional.

13.     During the course of the scheme, the defendant ARTUR ZABORENKO,

together with others, regularly mailed and caused to be mailed to No-Fault Insurers, including

but not limited to Insurer-1, by means of the United States Postal Service, paperwork constituting

and in support of the fraudulent claims.

14.     For example, on or about September 8, 2020, the defendant ARTUR

ZABORENKO, together with others, mailed and caused to be mailed to Insurer-1 a claim for

medical services consisting of, among other things, an Internal Revenue Service Form W-9 for

Company-1, medical records for diagnostic testing purportedly performed by Co-Conspirator-1

and various additional documents purporting to reflect medical diagnoses and conclusions

reached by Co-Conspirator-1 (the "September 8, 2020 Claim").  The medical records and other

documents were falsified because Co-Conspirator-1 had not provided the diagnostic testing and

had not evaluated, treated or met with the individual on whom the diagnostic testing was

purportedly performed.

15.     In order to ensure that he could collect the proceeds of the fraudulent

scheme, which were paid by No-Fault Insurers, including, but not limited to, Insurer-1, the

defendant ARTUR ZABORENKO, together with others, directed that the proceeds be mailed to

4

a particular address in Brooklyn, New York. For example, on or about September 17, 2020, in response to the September 8, 2020 Claim, Insurer-1 mailed a check made out to Company-1 to the address in Brooklyn designated by ZABORENKO.

      B.     Conspiracy to Launder Money and Transfer of Unlawful Proceeds

      16.     In or about and between January 2020 and December 2022, the defendant ARTUR ZABORENKO, together with others, conspired to launder the proceeds of the fraudulent scheme by, among other things, obtaining access to bank accounts in the name of co-conspirator medical professionals, writing and causing to be written checks drawn on the bank accounts of co-conspirator medical professionals, including, but not limited to, the 1134 Account, and transferring the proceeds of the fraud to third party corporations.

      17.     For example, the defendant ARTUR ZABORENKO directed Co-Conspirator-1 to give him access to the 1134 Account in order to receive the proceeds of the fraudulent scheme described above. Thereafter, between approximately October 2020 and December 2022, ZABORENKO and his co-conspirators deposited No-Fault Insurance benefits paid to Company 1 by No-Fault Insurers as a result of the false and fraudulent claims submitted by ZABORENKO and others into the 1134 Account. ZABORENKO and Co-Conspirator 1 agreed that Co-Conspirator 1 would provide ZABORENKO with signed blank checks drawn on the 1134 Account. As the proceeds of the fraudulent scheme were paid into Company-1's bank account by the No-Fault Insurers, ZABORENKO used and caused to be used checks drawn on the 1134 Account, including, but not limited to, signed blank checks provided by Co-Conspirator 1, to transfer the proceeds of the health care fraud scheme to various corporations and to Co-Conspirator 1. These transfers were designed, in whole and in part, to conceal and disguise, among other things, the fraudulent nature of the transferred funds.

18.     Certain of the checks written and caused to be written by the defendant ARTUR ZABORENKO exceeded $10,000 in value.  For example, on or about November 18, 2020, ZABORENKO, together with others, wrote and caused to be written a check drawn on the 1134 Account in the amount of $16,201.08.  The check was signed by Co-Conspirator-1.

COUNT ONE
(Conspiracy to Commit Health Care and Mail Fraud)

19.     The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20.     In or about and between January 2020 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ARTUR ZABORENKO, also known as "Alex," together with others, did knowingly and willfully conspire to: (a) to execute a scheme and artifice to defraud various No-Fault Insurers, including, but not limited to, Insurer-1, each of which was a health care benefit program as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of one or more materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, such No-Fault Insurers, in connection with the delivery of and payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347; and (b) to devise a scheme and artifice to defraud various No-Fault Insurers, including, but not limited to, Insurer-1, and to obtain money and property by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to place and cause to be placed in a post office or authorized depository for mail matter one or more matter and things to \

6

be sent and delivered by the United States Postal Service by mail according to the directions thereon, contrary to Title 18, United States Code, Section 1341.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNTS TWO AND THREE
(Mail Fraud)

21.     The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

22.     On or about the dates set forth in the table below, within the Eastern District of New York and elsewhere, the defendant ARTUR ZABORENKO, also known as "Alex," together with others, did knowingly and intentionally devise a scheme and artifice to defraud and to obtain money and property by means of one or more materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing the scheme and artifice and attempting to do so, did place and cause to be placed in a post office and authorized depository for mail matter, to be sent and delivered by the United States Postal Service, and did take and receive therefrom such matters and things, as indicated below:

| Count | Approximate Mailing Date | Description of Mailing |
|---|---|---|
| TWO | September 8, 2020 | Mailed claim form and supporting documents for false and fraudulent claim signed by Co-Conspirator-1 and mailed to Insurer-1 |
| THREE | September 17, 2020 | Mailed insurance reimbursement check mailed to Co-Conspirator-1 by Insurer-1 |

(Title 18, United States Code, Sections 1341, 2 and 3551 et seq.)

## COUNT FOUR
(Conspiracy to Commit Money Laundering)

23.     The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

24.     In or about and between January 2020 and December 2022, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ARTUR ZABORENKO, also known as "Alex," together with others, did knowingly and intentionally conspire to: (a) conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, mail fraud, in violation of Title 18, United States Code, Section 1341 and conspiracy to commit health care fraud and mail fraud, in violation of Title 18, United States Code, Section 1349, knowing that the property involved in such financial transactions represented the proceeds of some form of unlawful activity, and knowing that such transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and (b) engage and attempt to engage in monetary transactions, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, mail fraud, in violation of Title 18, United States Code, Section 1341 and conspiracy to commit health care fraud and mail fraud, in violation of Title 18, United States Code, Section 1349, knowing that the property involved in such monetary

transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Sections 1957(a) and 1957(b).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT FIVE
### (Engaging in Unlawful Monetary Transaction)

25.     The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

26.     On or about November 18, 2020, within the Eastern District of New York and elsewhere, the defendant ARTUR ZABORENKO, also known as "Alex," together with others, did knowingly and intentionally engage and attempt to engage in a monetary transaction, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, to wit: health care fraud, in violation of Title 18, United States Code, Section 1347, mail fraud, in violation of Title 18, United States Code, Section 1341, and conspiracy to commit health care fraud and mail fraud, in violation of Title 18, United States Code, Section 1349, knowing that the property involved in such monetary transaction represented the proceeds of some form of unlawful activity, to wit: a check in the amount of $16,201.08 from the 1134 Account to a purported medical billing company.

(Title 18, United States Code, Sections 1957(a), 1957(b), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNT ONE

27.     The United States hereby gives notice to the defendant that, upon his conviction of the offense charged in Count One, the government will seek forfeiture in accordance with (a) Title 18, United States Code, Sections 982(a)(7), which requires any person

convicted of such offense to forfeit any property, real or personal, that constitutes, or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense, and (b) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

        28.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

        (Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
### AS TO COUNTS TWO AND THREE

        29.    The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Two or Three, the government will seek

forfeiture in accordance with Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offense.

30.     If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

          (a)     cannot be located upon the exercise of due diligence;

          (b)     has been transferred or sold to, or deposited with, a third party;

          (c)     has been placed beyond the jurisdiction of the court;

          (d)     has been substantially diminished in value; or

          (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS FOUR AND FIVE

31.     The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Four and Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

11

32.     If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

12

other property of the defendant up to the value of the forfeitable property described in this

forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United

States Code, Section 853(p))


A TRUE BILL

*Teresa Kruge*

FOREPERSON


*By Assistant U.S. Attorney Carolyn Pokorny*
_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK


/s Glenn S. Leon/mgd
_____
GLENN S. LEON
CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

13

F.#: 2021R00884

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

### ARTUR ZABORENKO,

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(7), 982(b)(1), 1341, 1349,
1956(h), 1957, 2 and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____*day,*

*of* _____ *A.D. 20* _____

*Clerk*

*Bail, $* _____

***Miriam L. Glaser Dauermann, Trial Attorney (718) 254-7575***